**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

BRANT GREEN,

Petitioner,

v. No. 1:18-cv-00953-MV-JHR

JOHN W. BEAIRD, Warden, and
RAUL TORREZ, Attorney General
of the State of New Mexico,

Respondents[1].

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PETITIONER'S PETITION FOR A WRIT OF *HABEAS CORPUS* UNDER 28 U.S.C. § 2254**

This matter is before the Court on a petition for federal habeas corpus relief by an inmate of the State of New Mexico, Brant Green. [Doc. 1]. Green acknowledged its possible untimeliness and requested that it be accepted under the doctrine of equitable tolling. The State Respondents filed an answer opposing equitable tolling. [Doc. 12]. The case was referred to me for proposed findings and a recommended disposition, with development of the factual record as necessary. Upon review, I ordered development of the factual record which was completed through three evidentiary hearings.

These proposed findings address Green's request that his federal habeas petition, if not timely filed, nevertheless be considered through equitable tolling. I recommend that the District Judge find that equitable tolling is not supported and Green did not meet his filing deadline; on that basis, I recommend that the bulk of Green's claims be dismissed. A claim of actual

[1] At the time this case was filed, Mark Bowen served as Warden of the Northeast New Mexico Detention Facility, and Hector Balderas served as Attorney General of the State of New Mexico. They have since been succeeded by John W. Beaird, Acting Warden, and Raul Torrez, Acting Attorney General, respectively. Accordingly, John W. Beaird and Raul Torrez have been substituted as defendants in their official capacities pursuant to Federal Rule of Civil Procedure 25(d).

innocence is not subject to the filing deadline; I recommend the actual innocence claim be screened for sufficiency of the pleadings and, if it survives screening, be resolved on its merits.

## I. BRIEFING SUMMARY

Green raised more than 20 claims for relief subject to the 1-year filing deadline of the AEDPA, summarized as follows: denial of rights of confrontation and cross-examination, erroneous admission of character testimony, denial of due process by judicial conflict of interest, ineffective assistance of trial counsel (nine sub-claims), prosecutorial misconduct (seven sub-claims), denial of mandatory presentence credit (though acknowledged to have been corrected), illegal amendment and increase of sentence, vindictive sentencing, insufficient evidence for conviction, improper jury instructions, and cumulative error. [Doc. 1, pp. 18-24]. Green also asserted his factual innocence, a claim which is not subject to the 1-year deadline for filing. [Doc. 1, p. 20].

In their answer, the State respondents challenged the petition as untimely. [Doc 12, p. 1]. Respondents recited the following pertinent procedural history.

Green was convicted by jury on February 11, 2011, and sentenced on October 18, 2011. [Doc. 12, Exh. A]. He filed a timely appeal to the New Mexico Court of Appeals which affirmed but remanded to correct an error in the statement of the charges of conviction. [Doc. 12, Exhs. J and R].

Green sought certiorari from the New Mexico Supreme Court which was denied on July 24, 2013. [Doc. 12, Exhs. S and T].

According to Respondents, "[b]y then, the state district court already made the corrections that were the subject of the remand order." [Doc. 12, citing Exh. D at 1; Exh. W at

17]. Notwithstanding, the New Mexico Court of Appeals issued a mandate to the trial court clerk on November 13, 2013. [Doc. 12, Exh. U].

On February 9, 2015, through post-conviction counsel Scott Davidson, Green filed a petition for habeas corpus in the state trial court. [Doc. 12, Exh. V].

The trail court held a hearing and denied relief by order on December 14, 2016, [Doc. 12, Exhs. W, X, and Y], and the New Mexico Supreme Court denied certiorari on August 15, 2017. [Doc. 12, Exh. AA].

Green's petition was filed by the Court Clerk on October 12, 2018, [Doc. 1], but his filing date is October 9, 2018, [*see* Doc. 1, p. 15], under the prison mailbox rule.

**A. Issues**

1.) Did Green timely file his petition within the one-year time limit of AEDPA?

   a.) When did the one-year AEDPA clock start?

   b.) What, if any, time was statutorily tolled?

   c.) As a result, when was Green's deadline to file his federal habeas petition?

2.) If not timely filed, should the petition be accepted under the doctrine of equitable tolling?

   a.) Did Green diligently pursue his right to file a timely petition?

   b.) Was Green prevented from filing a timely petition by extraordinary circumstances?

3.) Is Green's actual innocence claim subject to AEDPA limitation?

**B. Proposed Findings of Fact**

Brant Green filed a petition for habeas corpus under 28 U.S.C. 2254 against Senior Warden Mark Bowen of the Northeast New Mexico Detention Facility and New Mexico Attorney General Hector Balderas on October 12, 2018. [Doc. 1]. Green certified in his petition

that he placed it in prison mail on October 9th, [Doc. 1, p. 15], making October 9, 2018, his filing date for AEDPA purposes.

**C. State Court Proceedings through Completion of Direct Appeals**

Green was convicted by a New Mexico state court jury of criminal sexual penetration in the second degree, NMSA 1978, § 30-9-11 (Count 1), and three counts of criminal sexual contact of a minor in the second degree, NMSA 1978, § 30-9-13 (Counts 2-4). [Doc. 1, pp. 1-2].

His judgment, sentence, and commitment was filed on October 18, 2011, and contained significant errors: describing the three criminal sexual contact convictions as "criminal sexual penetration" and adding a fifth conviction of the same (Count 5) which did not occur.[2] [*See* Doc. 12, Exh. W at 17-18]. There were also errors in the sentences imposed. [*See* Docs. 12-1, pp. 1-2; *see also* Doc. 12, Exhs. A, B, C, D, and W at 17-18]. The Court imposed 15 years for Count 1 and 9 years each for the others, all consecutive, and concluded erroneously that the total sentence is 32 years, of which the final 2 years are suspended. [Doc. 12, Exh. A].

The trial court filed an amended judgment & sentence on November 15, 2011, which correctly noted dismissal of Count 5 and imposed sentences of 15 years on each of Counts 1-4 (with 2-4 still misnamed), to run consecutively for a total sentence of 60 years with 30 years suspended. [Doc. 12, Exh. B].

The trial court filed a second amended judgment & sentence on December 1, 2011. [Doc. 12, Exh. C]. The second amended judgment & sentence retained the naming errors from previous versions and added another error in the sentencing paragraph by describing Count 1, the

[2] An actual Count 5, a fourth charge of criminal sexual contact of a minor, is shown in the trial court docket at "dismissed by prosecutor." [Doc. 12-1, p. 416]. Consistent with that dismissal, the record contains no jury verdict form for Count 5, indicating that the charge was not submitted to the jury for consideration at trial. [*See* Doc. 12-1, p. 422].

only conviction for penetration, as involving "contact"; other descriptions of Count 1 in the same document accurately say "penetration." [*Id.*].

Green filed a timely direct appeal to the New Mexico Court of Appeals on January 3, 2012, raising only issues of trial evidence; that appeal was denied in an opinion filed April 18, 2013. [Doc. 12, Exhs. J (notice of appeal) and R (memorandum opinion)]. Though not an issue raised on appeal, the Court of Appeal expressly remanded "to the district court for correction of the second amended judgment & sentence to accurately reflect Defendant's convictions." [Doc. 12, Exh. R at 18]. The Court of Appeals did not expressly order resentencing.

At the time of its remand, the Court of Appeals was apparently unaware that a third amended judgment & sentence issued on July 11, 2012. [Doc. 12, Exh. D]. This version finally corrected the names of Counts 2-4 to "criminal sexual contact" and reduced the sentence for those counts to nine years each with all counts running consecutively for a total sentence of "42 years in prison, of which the last twelve … years are suspended."[3] [*Id.* at 2; *compare* signed verdict forms, Docs. 1-4, pp. 201-04; 12-1, pp. 49-52].

After an extension of his filing deadline, Green filed a timely petition for certiorari from the New Mexico Supreme Court on June 10, 2013. [Doc. 12, Exh. S]. The New Mexico Supreme Court denied certiorari by an order filed July 24, 2013, affirming Green's convictions but noting a need for correction of the judgment & sentence to reflect one conviction for criminal sexual penetration in the second degree and three convictions for criminal sexual contact of a minor in the second degree. [Docs. 1, p. 96; 1-1, pp. 150, 167; 12-1, p. 262]. As noted above,

[3] Sentencing authority for a second degree felony sexual offense against a child in 2011 was 15 years, as stated in the amended and second amended judgment & sentence documents. [Doc. 12, Exhs. B and C]. The original judgment & sentence as well as the third amended version imposed only nine years on each count, an apparent error in Green's favor. *See* NMSA 1978, § 31-18-15 (eff. July 1, 2007, to February 24, 2016); [*see also* Doc. 12, Exhs. A and D]. If never corrected, the mistaken third amended sentence would also have reduced Green's post-incarceration exposure on a probation or parole violation by 24 years.

that correction was made through the third amended judgment & sentence on July 11, 2012, while Green's appeal was before the Court of Appeals. The Supreme Court did not order resentencing (which at that point would have allowed correction to the proper longer sentence).

The Court of Appeals issued its own mandate to the Sixth Judicial District Court on November 13, 2013 (file-stamped in the Luna County District Court on November 19, 2013), remanding the case "for further proceedings consistent with said decision" including correcting names of convictions in the second amended judgment and sentence (which had already taken place) but not expressly ordering resentencing. [Docs. 1, pp. 2-3, 96; 1-1, pp. 132, 168 (file-stamped mandate); *see also* Doc. 12-1, p. 424 (restatement of Court of Appeals instructions)]. By all indications, both New Mexico appellate courts were unaware of the third amended judgment & sentence which corrected the names of the convictions but imposed sentences less than the basic sentences for the three "contact" charges.

Green in his federal petition calculated that his direct appeal proceedings were final as of February 11, 2014, ninety days after the November 13, 2013, Court of Appeals mandate. [Doc. 1, p. 96].

**D. Attorney-Client Relationships with Attorney Scott Davidson**

In August 2013, Green, through his family, hired attorney Scott Davidson to prepare a report evaluating his arguments for a potential state habeas petition.[4] *See Topical Summary of Evidentiary Hearing: Hiring of Attorney Scott Davidson.*

In August 2014, after receipt and review of attorney Davidson's evaluation report, Green, through his family, hired Davidson to prepare and file a state petition for habeas corpus. *See Topical Summary: State Habeas Petition.*

[4] Green states in his federal petition that he hired Davidson in August 2013, "to prepare a state petition for writ of habeas corpus," which is incorrect based on the testimony at the evidentiary hearing, as discussed below. [Doc. 1, p. 96].

On February 9, 2015, Davidson filed Green's first state habeas petition. [Docs. 1, p. 3 (incorrectly stating petition was filed on February 9, 2014); 12-1, p. 352; 12-1, Exh. V; *see Topical Summary: State Habeas Petition*]. Green raised issues of factual innocence, judicial conflict of interest denying due process, multiple allegations of ineffective assistance of trial counsel, and prosecutorial misconduct denying a fair trial. [Doc. 1, p. 20].

The trial court issued a partial denial of Green's habeas petition on April 8, 2015, and set an evidentiary hearing for "allegations that defense counsel did not interview important witnesses". [Doc 12, Exh. W at 19]. Its order acknowledged that the Second Amended Judgment, Sentence and Commitment erroneously described Green's three criminal sexual contact convictions as "Criminal Sexual Penetration" and erroneously described the length of Green's sentence. [*Id*. at 17-18]. The Court noted that those errors were corrected in the Third Amended Judgment, Sentence and Commitment issued July 11, 2012. [*Id*. at 17].

On October 5, 2015, after a response brief from the State, Green, through Davidson, requested an extension of the reply deadline. [Doc. 12-1, p. 424]. As recited in the trial judge's Order Appointing Counsel & Striking and Quashing Pro Se Documents:

> Before the Court could rule on the Petitioner's Motion to Extend Time, the Petitioner began filing *pro se* documents. … On October 19, 2015, the Petitioner filed a *pro se* Motion to Appoint Counsel and Entry of Appearance. … Mr. Davidson filed a Motion to Withdraw the following day, which the Court granted on December 17, 2015. … The Court now takes the opportunity to appoint counsel and clarify exactly what will happen in this case.

[Doc. 12-1, p. 394].

Attorney Davidson, on motion and order, withdrew from representing Green on December 17, 2015, while the petition for state habeas relief was pending. *See Topical Guide: Davidson's Withdrawal and Subsequent Communications*. Green was appointed new counsel

from the Public Defender Department (Habeas Unit/Division) on March 15, 2016, for his state habeas proceeding. [Doc. 12-1, pp. 396, 425].

After the original trial judge's retirement, and after the evidentiary hearing granted earlier, and nearly a year after Davidson's withdrawal, the Sixth Judicial District trial court denied habeas relief on December 14, 2016. [Docs. 1, pp. 11, 97; 12, Exh. Y].

After an extension of his filing deadline, on February 10, 2017, Green sought certiorari from the New Mexico Supreme Court on the issues of judicial disqualification, prosecutorial misconduct, and ineffective assistance of counsel. [Docs. 1, pp. 21, 97; 12, Exh. Z]. Certiorari was denied on August 15, 2017. [Docs. 1, p. 11; 12, Exh. AA].

While his first habeas petition was on appeal, Green, then *pro se*, filed a second habeas petition in the trial court on August 4, 2017. [Docs. 1, pp. 4, 97; 1-3, pp. 7-33]. Green raised issues of failure to allow mandatory presentence confinement credit and illegal increase of sentence and illegal amendment of "the initial judgment and sentence." [Doc. 1, p. 22].

Green moved to amend his second habeas petition in the trial court on February 9, 2018. [Docs. 12-1, p. 426; 1, p. 98]. He sought to add claims of ineffective assistance of counsel at trial, prosecutorial misconduct, insufficient evidence for conviction, a due process violation because of improper jury instructions, and cumulative error. [Doc. 1-4, pp. 16-72]. After a partial dismissal, the trial court issued a fourth amended judgment & sentence on June 27, 2018. [Docs. 12, Exh. E; 1, p. 98]. Green *pro se* sought certiorari on the partial dismissal on July 27, 2018. [Doc. 1, p. 98]. The New Mexico Supreme Court ordered briefing on the illegal amendment of sentence issue, which was completed on September 20, 2018. [Doc. 1, p. 98]. The New Mexico Supreme Court denied certiorari on October 9, 2018. [per New Mexico Courts

Case Lookup, caselookup.nmcourts.gov, *Green v. Bowen*, No. S-1-SC-37168, register of actions accessed May 12, 2026, 4:35 p.m.].

Green filed his federal habeas petition on October 12, 2018. [Doc.1]. He raised the following claims:

1.) Denial of the right to confront and cross-examine witnesses under the Sixth Amendment. [Doc. 1, p. 24]. Green filed a direct appeal on this issue in state court. [Docs. 12-1, pp. 70-71; 12, Exh. O at 35-52].

2.) Admission of untruthful testimony in violation of Rule 11-608(A) NMRA. [Doc. 1, p. 32]. Green filed a direct appeal on this issue in state court. [Doc. 12, Exh. O at 53-56].

3.) Cumulative error. [Doc. 1, p. 33]. Green filed a direct appeal on this issue in state court. [Doc. 12, Exh. O at 57].

4.) Actual innocence. [Doc. 1, p. 34]. Green did not file a direct appeal on this issue but first raised it in his first state habeas petition. [See Doc. 12, Exh. O; *see also* Doc. 12, Exh. V at 11-15].

5.) Due process violation from judicial conflict of interest. [Doc. 1, p. 35]. Green did not raise the issue on direct appeal but in his first state habeas petition; it was denied by the trial court and certiorari was denied by the New Mexico Supreme Court on August 15, 2017. *Id.*, pp. 18(b-c).

6.) Denail of right to counsel "by multiple failures of both his trial attorneys." [Doc. 1, p. 39]. First raised in the first state habeas petition; all seven grounds were denied by the trial court and certiorari was denied by the New Mexico Supreme Court on August 15, 2017. *Id.*, pp. 57-58.

7.) Denial of a fair trail by prosecutorial misconduct. [Doc. 1, p. 59]. First raised in the first state habeas petition; denied by the trial court and certiorari was denied by the New Mexico Supreme Court on August 15, 2017. *Id.*, pp. 61-62.

8.) ["Abandoned", *see* p. 22]. Denial of mandatory presentence confinement credit. [Doc. 1, p. 63]. First raised in the first state habeas petition; granted by the trial court. *Id.*, p. 21(a).

9.) Illegal increase of sentence and amendment of judgment and sentence. [Doc. 1, p. 66]. First raised in second state habeas petition and denied by the trial court. *Id.*, p. 67. Certiorari denied on October 8, 2018.

10.) Ineffective assistance of trail counsel (four types). [Doc. 1, p. 24]. Raised in a *pro se* motion to amend the second state habeas petition. *Id.*, p. 77. Certiorari denied on October 8, 2018.

11.) Violation of due process and right to fair trial (six types). [Doc. 1, p. 79]. Raised in a *pro se* motion to amend the second state habeas petition. *Id.*, pp. 80-81. Certiorari denied on October 8, 2018.

12.) Insufficient evidence for convictions. [Doc. 1, p. 86]. Raised in a *pro se* motion to amend the second state habeas petition. *Id.*, p. 87. Certiorari denied on October 8, 2018.

13.) Due process violation by improper jury instructions. [Doc. 1, p. 89]. Raised in a *pro se* motion to amend the second state habeas petition. *Id.*, p. 90. Certiorari denied on October 8, 2018.

14.) Cumulative errors. [Doc. 1 p. 92]. Raised in a *pro se* motion to amend the second state habeas petition. *Id.*, p. 92. Certiorari denied on October 8, 2018.

At the time he filed his federal petition, Green believed he had two days left of the one-year AEDPA limitation period. [Doc. 1, pp. 98-99]. Out of concern that the two days would lapse by the time he received notice of the New Mexico Supreme Court's resolution of his second state habeas petition, Green filed his federal petition on October 12, 2018, to preserve his right to file. [Doc. 1, p. 99]. He asked the federal court to hold the petition in abeyance pending the final state court decision. [Doc. 1, p. 99].

In the alternative, if his federal petition is untimely, Green asked to be able to argue equitable tolling ("extraordinary circumstances") of the limitations period. [Doc. 1, p. 100].

Bowen and Balderas filed an answer on June 30, 2020, arguing that the entire petition was untimely filed after the one-year limitation period. [Doc. 12]. Green then filed a reply on October 30, 2020. [Doc. 25]. By leave of court, Green filed an amended reply on March 29, 2021. [Doc. 31].

Pretrial duties were reassigned to Magistrate Judge Jerry Ritter on November 10, 2020. [Doc. 27 text only]. Presiding District Judge Martha Vazquez referred the case to Judge Ritter on January 7, 2021. [Doc. 29].

In his amended reply, Green asserted that "the untimeliness of the petition was due to the egregious conduct of retained counsel." [Doc. 31, p. 1]. Green presented two grounds in support of his request that the Court consider the late petition under equitable tolling. [Doc. 31, pp. 1-2]. First, Green alleged "egregious conduct of the post-conviction counsel", *id.*, p. 2, in that counsel did not tell Green of the limitations start or end dates. *Id.* "At the time I filed my Federal Habeas Petition, I believed that Post-conviction counsel had filed my State Habeas Petition within mere days of the expiration of the limitations period. At that time, it had not occurred to me that my retained counsel had not tolled the limitations period." *Id.*

Green alleged as a second ground for equitable tolling "the existence of a fundamental miscarriage of justice", *id.*, arguing later in his reply a fundamental miscarriage of justice resulted from judicial abuse of discretion in failing to recuse, *id.*, p. 22, and prosecutorial misconduct, *id.*, p. 23.

Upon initial review, the briefing indicated evidentiary issues requiring resolution to determine whether the petition (other than the actual innocence claim) is untimely yet reviewable under the doctrine of equitable tolling. [Doc. 34]. Judge Ritter held a series of evidentiary hearings on the factual basis for equitable tolling: October 22, 2022 [transcript, Doc. 50]; December 5, 2022 [transcript, Doc. 49]; and January 25, 2023 [Doc. 52].

## II. APPLICABLE LAW

### A. The Limitation Period for Filing a Federal Habeas Petition

Generally, a state inmate seeking federal habeas relief must first exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A); *see Rose v. Lundy*, 455 U.S. 509 (1982). State remedies are not exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented."[5] 28 U.S.C. § 2254(c). Section 2244(d)(2) "incorporates the concept of exhaustion of state remedies into a tolling provision rather than into the limitation itself." *Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003).

A state inmate challenging a state conviction or sentence in federal court must file their federal petition no later than one year after "the latest of" four events. 28 U.S.C. § 2244(d)(1). In Green's case, the relevant event is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In the Tenth Circuit, after direct appeal to the highest state court, seeking certiorari from the United States Supreme Court can extend the time; if not sought, the time expires 90 days after the state's highest court's final order. *See Serrano v. Williams*, 383 F.3d 1181, 1184-85 (10th Cir. 2004). For state inmates, the state has the burden of proof that the AEDPA limitation period has expired. *Fleming v. Evans*, 481 F.3d 1249 (10th Cir. 2007).

If a petition to a state court for post-conviction relief is filed before the one-year deadline expires, the remaining time is tolled until conclusion of the post-conviction proceedings. 28 U.S.C. § 2244(d)(2). The petition must be "properly filed," meaning delivered and accepted "in compliance with" filing rules. *Artiz v. Bennett*, 531 U.S. 4, 8 (2000). "Pendency" of a state petition is determined under federal law. *Serrano*, 383 F.3d at 1183, citing *Gibson v. Klinger*,

[5] Ineffectiveness of counsel in post-conviction proceedings is not a proper ground for federal habeas relief. 28 U.S.C. § 2254(i).

232 F.3d 799, 806 (10th Cir. 2000). In the Tenth Circuit, a state post-conviction petition is "pending" during "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies." *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999). Moreover, "pendency" includes the time during which a state post-conviction petitioner could have filed a state appeal, even if they did not. *Gibson*, 232 F.3d at 804.

A state collateral relief appeal to the New Mexico Court of Appeals and then by petition for certiorari to the New Mexico Supreme Court is "final" after a grant of certiorari when a mandate ordering specific lower court action issues, *see Serrano v. Williams*, 383 F.3d 1181, 1184 (10th Cir. 2004) (interpreting N.M.R.App. P. 12-402(B) (2002)). On the other hand, if certiorari is denied, the state appeal is over on the date of that order; normally, no mandate issues. *Serrano*, 383 F.3d at 1185.

Distinct from direct review, there is no tolling after final denial of state collateral relief for the time allowed to seek certiorari in the United States Supreme Court. *Rhine v. Boone*, 182 F.3d 1153, 1156 (10th Cir. 1999). However, the Tenth Circuit has ruled that the AEDPA limitation period is tolled for the 15 days after the New Mexico Supreme Court denies a petition for certiorari because of a New Mexico rule that allows that time to file a motion for rehearing, regardless of whether such a motion is filed. *Serrano*, 383 F.3d at 1183.

The "prison mailbox rule" applies to inmate filing of federal habeas petitions: the petition is deemed filed when given to prison authorities for mailing. 28 U.S.C. § 2244(d); *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Burger v. Scott,* 317 F.3d 1133, 1138 (10th Cir. 2003); *Marsh v. Soares*, 223 F.3d 1217, 1218 n. 1 (10th Cir. 2000).

**B. Equitable Tolling of the Federal Limitation Period**

The deadline to file a federal habeas petition is not jurisdictional, *Day v. McDonough*, 547 U.S. 198, 205 (2006), and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631 (2010); *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).

A state inmate seeking equitable tolling of the AEDPA deadline must show (1) diligent pursuit of claims and (2) timely filing was prevented by "extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). The burden to establish the propriety of equitable tolling is on the petitioner. *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005).

Because there is no constitutional right to counsel for post-conviction proceedings, attorney negligence does not ordinarily support equitable tolling. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). Instead, a petitioner must show that counsel's conduct was "sufficiently egregious." *Fleming v. Evans*, 481 F.3d 1249, 1256 (10th Cir. 2007). Counsel's deception of actively pursuing relief when he was not is potentially "egregious misconduct," where mere negligence would not be. *Id.* Reliance upon a third party for drafting and filing a habeas petition does not by itself absolve the petitioner from the responsibility of timely filing. *See Marsh*, 223 F.3d at 1220-21. "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

An inmate's own ignorance of the law, including the exact AEDPA deadline for his case, is not an excuse for late filing. *See Marsh*, 223 at 1220.

**C. Actual Innocence claim not subject to AEDPA limitations.**

Timeliness of a multiple-claim federal habeas petition is evaluated claim-by-claim.

Actual innocence requires that one "must show that it is more likely than not that no reasonable juror would have found [petitioner] guilty beyond a reasonable doubt" absent a constitutional error. *Schlup v. Delo,* 513 U.S. 298, 327 (1995).

A claim of actual innocence is not subject to the one-year time limitation of AEDPA and so Green's actual innocence claim is not analyzed here but will be screened separately. *McQuiggin v. Perkins*, 569 U.S. 383, 398 (2013).

## III. ANALYSIS

### A. Green's federal habeas petition was not timely filed.

Under AEDPA, Green's petition is timely if filed within one year after the end of direct review, taking account of statutory tolling periods, if any.[6] 28 U.S.C. § 2244(d)(1)(A).

Green's direct review of his trial proceedings in state court concluded with the New Mexico Supreme Courts' denial of his request for certiorari on July 24, 2013. [Doc 12, Exh. T]. He had the opportunity to seek certiorari from the United States Supreme Court but did not do so. Therefore, his one-year AEDPA clock started when his time to seek federal certiorari expired, 90 days after denial of state certiorari, or October 22, 2013. *See Serrano*, 383 F.3d at 1184-85.

Green did not undergo a resentencing that increased his conviction or punishment so as to restart his AEDPA clock. Nor did he file a petition for state collateral review of his conviction or sentence during the one-year window, so he is not entitled to any statutory tolling. Therefore, his AEDPA time limit to seek federal habeas relief expired on October 22, 2014.

Green filed a state habeas petition on February 9, 2015, more than a year after the end of direct review. Green's attorney, believing that the New Mexico Supreme Court's mandate to the

[6] Green does not assert the existence of facts supporting other possible trigger dates under 28 U.S.C. § 2244(d)(1)(B-D).

New Mexico Court of Appeals tolled the federal deadline until mandated proceedings were concluded, thereby misapprehended the federal AEDPA deadline and mistakenly thought the state habeas petition was filed in time to toll the AEDPA clock.

**B. Green is not entitled to equitable tolling of his deadline to file his federal habeas petition.**

Green's argument is that he was diligent in pursuing his rights but Davidson's egregious misconduct prevented him from timely filing his federal habeas petition. The doctrine of equitable tolling would extend his filing deadline if he can demonstrate both (1) diligent pursuit of his claims and (2) "extraordinary circumstances beyond his control" that prevented timely filing. *Marsh*, 223 F.3d at 1220. Considering the totality of the circumstances, Green is unable to establish either of the required showings.

*i. <u>Green did not establish the diligence required for equitable tolling.</u>*

Green's "diligence" argument is not that he did all that he was required to do to preserve his right to federal relief, but that he relied upon and was misled by his attorney about his real filing deadline. His evidence establishes that Green, personally and through his family, actively communicated to his attorney Davidson that he wanted to file a timely federal petition and expected Davidson to calculate his deadline for timely filing. The thrust of his argument is that those activities amounted to Green making Davidson, as his agent, solely responsible for timely filing Green's federal petition.

The applicable law does not allow a petitioner to abdicate his own responsibility for timely filing. *See Marsh*, 223 F.3d at 1220-21. Ultimately, Green's active communication of his desires to his attorney and his expressions of reliance upon his attorney's advice did not amount to the diligence required for equitable estoppel.

ii. *Green did not experience extraordinary circumstances that prevented him from timely filing.*

Green asserts that he was the victim of egregious misconduct and extraordinary circumstances that, in combination with his own diligence, justified equitable tolling. Under the totality of the circumstances, his attorney's mistakes do not meet that high standard.

Undoubtedly, attorney Davidson miscalculated Green's federal filing deadline. But he did so based on a mistaken judgment of the state of the law regarding mandates issuing from the state's highest court upon direct review. Davidson believed that a mandate that required affirmative lower court action on the case would allow tolling of the AEDPA deadline until the action was taken and any resulting challenges were resolved, or the right to challenge expired or was waived. *See Topical Summary: Davidson's calculation of the AEDPA deadline for filing a federal habeas petition.*

Notably, while Green's original judgment & sentence was amended three times, no amendment widened the scope of his conviction or increased the punishment imposed. In summary, a fourth amended judgment & sentence was needed solely to properly state the convictions based on the actual jury verdicts and to reflect sentences within the ranges authorized by law. There is no record of the trial court considering, or being asked or mandated to consider, whether the sentences imposed were otherwise improper. Moreover, the New Mexico Supreme Court mandate for a final amendment was essentially moot when issued: that Court was apparently unaware that the corrections it ordered were provided in the last previous amendment. In that sense, the final New Mexico Supreme Court mandate was even less than ministerial and did not reset the AEDPA clock.

Davidson's miscalculation did not arise to the level of egregious conduct that creates extraordinary circumstances.

Green alleges the Davidson's late filing of the first state habeas petition resulted from "willful dereliction of his duties." [Doc. 52. p. 97]. The totality of the circumstances does not support that conclusion.

Green argues that Davidson never told Green his deadline expired and asserts, without supporting evidence, that Davidson "intentionally withheld information regarding the time remaining on the limitations period or how they even calculated until after it was too late." [Doc. 52, p. 99]. Instead, the evidence shows that Davidson made an error of law by concluding that the New Mexico Supreme Court's mandate to correct the (then superseded) judgment & sentence would toll the time until the correction was made. There is no evidence that Davidson intended to cause untimely filing of the state habeas petition or that, prior to that filing, he held the belief that Green's AEDPA deadline had already expired.

Green's assertion that Davidson "led us to believe that the federal limitations period would be tolled when he filed that state petition", [Doc. 52, p. 100], appears true, but only because Davidson believed that himself at the time of his assurances. No evidence supports a conclusion that Davidson's mistake was any more than ordinary negligence.

Notwithstanding the complaints that Green and his family members made about Davidson taking too long to answer questions, especially about the AEDPA deadline, the record shows that Davidson was reasonably communicative given the other demands of his practice and the extraordinary volume of communications from Green and his family. *See Topical Summary: Davidson's Withdrawal as Green's Attorney.*

This is not a case of attorney abandonment. Davidson did not abandon Green. His formal representation of Green did not begin until August 2014, approximately two months before Green's actual AEDPA deadline, though Davidson did not understand that deadline at the

time. His representation then continued through filing of the state habeas petition which was intended to toll the AEDPA deadline on February 9, 2015, and thereafter until Green started filing his own pro se pleadings in the state habeas proceeding, upon which Davidson requested and was granted the ability to withdraw as Green's counsel. Thereafter, Davidson continued to assist Green *pro bono*, as he saw it, by recalculating the AEDPA deadline (though incorrectly) and offering Green a strategy to extend the deadline further with a motion to the trail court to enter a corrected judgment and sentence, which Davidson did not believe had yet been properly done. *See Topical Summary: Correspondence after Davidson's Withdrawal*. Green did not follow that advice, which also cuts against his diligence argument. *See Topical Summary: State Court Proceedings after Davidson's Withdrawal.*

Nor is this a case in which Davidson engaged in egregious misconduct by intentionally deceiving Green. *See Fleming*, 481 F.3d at 1256 (holding that repeated assurances by retained counsel over the course of a year that a filing was forthcoming warranted an evidentiary hearing). Ultimately, "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." *Lawrence*, 549 U.S. at 336.

**C. Green's Actual Innocence claim is not subject to the AEDPA limitation and can proceed separately.**

The initial briefing presented the issue of timeliness of Green's federal petition and whether, under his specific circumstances, equitable tolling would allow acceptance of his petition if it was filed late. Ground Four of Green's petition asserted "Mr. Green is factually innocent of the charges, which were fabricated by his troubled step-daughter." [Doc. 1, p. 34]. The parties post-petition briefing concentrated on timeliness of the petition and did not join the issue of actual innocence. Whether or not the Court adopts the recommendation that Green's

other grounds are untimely under the AEDPA, and in accordance with the Respondents' request at the conclusion of the evidentiary hearings, [Doc. 52, pp. 110-22], I recommend that the Court order the parties to brief the merits of Green's claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

## IV. CONCLUSION & RECOMMENDATIONS

Green's federal petition asserts more than twenty claims for relief, of which all but one is subject to the one-year federal filing limitation of the AEDPA.

Green's actual innocence claim in Ground Four, [Doc. 1, pp. 34-35], is not subject to the one-year filing limitation of the AEDPA and so cannot be dismissed because of late filing.

Green's other claims are subject to the one-year filing limitation which Green did not satisfy and which was not extended through equitable tolling. Therefore, those claims should be dismissed with prejudice.

Pursuant to the referral of this matter to me for proposed findings and a recommended disposition, I propose the findings of fact set forth herein and recommend that the District Judge, subject to consideration of any timely objections, dismiss with prejudice all but Ground Four (Actual Innocence) of Green's petition.

I also recommend that the District Judge order, or direct me to order, briefing on whether Green's claim of actual innocence is sufficient to go forward. Upon full briefing of that issue, I propose to recommend either that the claim of actual innocence be dismissed as insufficient or that it proceed through further development of its factual basis to a subsequent recommendation that federal habeas relief be either granted or denied.

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**Topical Summary of Evidentiary Hearings**

- **Witnesses**
  - Five witnesses testified at the evidentiary hearing regarding Green's claim for equitable estoppel: Kay Gaitan (formerly Green), Brant Green's mother, [Gaitan, Doc. 50, pp. 12-14]; Tennie Shumate, Brant Green's step-mother, [Gaitan, Doc. 50, pp. 15 and 31]; Trina Williams, aka Trina Chanez, [Williams, Doc. 50, pp. 92-93]; Brant Green, and; Scott Davidson, Green's former attorney for some state post-conviction proceedings.
- **Hiring of Attorney Scott Davidson**
  - Scott Davidson was recommended by Green's appellate attorney, Todd Hotchkiss, to help with Green's state habeas petition. [Shumate, Doc. 50, p. 31].
  - Tennie Shumate phoned Davidson's office on August 7, 2013, and Shumate and Davidson spoke on the phone on August 14th, according to Davidson, [Doc. 49, p. 30], although Shumate recalls that phone conversation happening on August 21st. [Doc. 50, p. 31].
  - Around August 23, 2013, Shumate and Jefferson met with Davidson at his office. [Davidson, Doc. 49, p. 30]. Davidson does not recall if time limitations or a federal petition were discussed at that meeting. [Davidson, Doc. 49, pp. 31-32]. Instead, Shumate and Jefferson agreed to hire Davidson to do an investigatory report on the potential merit of a state habeas petition, with the possibility of a later engagement to prepare that petition. [Davidson, Doc. 49, p. 32].

- According to Davidson, "the point of the investigation is to give the family and the client information so they can decide whether to go forward with a large investment of money." [Doc. 49, p. 42]. Prospective clients who are determined to go forward initially can skip the investigation. [Davidson, Doc. 49, pp. 42-43].
- Davidson signed the Legal Investigation Agreement on September 5, 2013, and Green signed on October 8, 2013. [Doc. 46-1, p. 30; *see also* Davidson, Doc. 49, p. 131]. Davidson's Legal Investigation Agreement said:
    - "Attorney agrees to investigate the viability of habeas corpus or other appropriate post-conviction relief from the judgment and conviction…. Attorney agrees to provide to Client a thorough report at the conclusion of the investigation. Attorney also agrees to make one in-person visit to Client, who is currently incarcerated in Clayton, …. The focus of the investigation will be on available relief from the conviction and sentence…. This Agreement pertains to Attorney's investigation of potential remedies available to Client and does not cover filing pleadings in a court of law or representation in post-conviction proceedings. The parties have agreed that this investigation is a first step and that the parties might enter into a second agreement involving Attorney's representation of Client in post-conviction proceedings, depending on the results of the investigation…. Should Client and Guarantors wish to hire Attorney to represent Client in post-conviction proceedings in a court of law, the parties may negotiate a separate agreement to cover representation in such proceedings." [Doc. 46-1, p. 28; *see also* Doc. 49, pp. 130-31].

- Shumate soon after delivered Green's case file from Hotchkiss's office to Davidson, talked to him about handling Green's state habeas petition and paid him a retainer fee. [Shumate, Doc. 50, pp. 31-32]. During that conversation, Davidson drew a chart of the post-conviction path through the legal system including both state and federal habeas petitions. [Shumate, Doc. 50, p. 33; Doc. 25-1, p. 12]. Shumate didn't know what an investigative report was or what Davidson was being paid for except to represent Green. [Shumate, Doc. 50, pp. 79-80].
- Kay Gaitan, Tennie, and Green's father spoke to Scott Davidson in August of 2013 at the correctional facility in Clayton, New Mexico.[7] [Gaitan, Doc. 50, p. 15]. They discussed "the timeline and when he would be filing" Green's habeas petition. [Gaitan, Doc. 50, p. 17]. Gaitan recalls that Davidson said that he could file the petition "within the time limits" and that he would provide a "report" first for the client(s) to review. [Gaitan, Doc. 50, p. 18]. Davidson may have said the report would be provided in November 2013. [Gaitan, Doc. 50, p. 22].
- Brant Green's parents hired attorney Scott Davidson to draft the investigative report beginning in August of 2013. [Gaitan, Doc. 50, p. 14]. Williams was not part of that discussion. [Williams, Doc. 49, p. 19]. "They [] did not want to hire [Davidson] at that meeting to represent [Green] in state habeas proceedings. It was only [] at that juncture[] to do investigation, and then depending on how the investigation came out, then there might be representation in court." [Davidson, Doc. 49, p. 32]. "[T]he agreement specifically says no representation in any

[7] Gaitan mistakenly testified that the meeting was in 2014, which could not be true as the investigative report was already done by then.

court, just an investigation." [Davidson, Doc. 49, p. 50]. "The legal investigation agreement [also] didn't promise to give [the report] to [Green] by a particular date." [Davidson, Doc. 49, p. 87]. Davidson gave Green's parents a handmade simplified diagram of the procedural paths for post-conviction relief. [Davidson, Doc. 49, p. 46]. Davidson does not "recall how much interest they expressed, or disinterest, in the federal avenue." [Doc. 49, p. 53].

- The report would address "[w]hat he would see that needed to be done." [Gaitan, Doc. 50, p. 18]. As a result of that meeting, Gaitan "believed and trusted" that Davidson "would take care of [Green's] case and get everything done in the proper time frame." [Gaitan, Doc. 50, p. 20]. The participants discussed the importance of a federal petition if a state petition was not successful. [Gaitan, Doc. 50, p. 21].

- **Davidson's Preparation of the Investigative Report**
  - Green sent Davidson a letter dated October 8, 2013, enclosing "a final draft of the Habeas Outline that [Green] put together," [Doc. 25-1, p. 37], including a "Case Issues Outline" of about 120 pages and asked Davidson to "carefully consider each after reviewing these documents." [Gaitan, Doc. 50, pp. 25-28]. Davidson recalls it was "very detailed and voluminous." [Doc. 49, p. 54].
  - Davidson sent Shumate a letter dated November 13, 2013, about his "Process of Investigation." [Shumate, Doc. 50, p. 36; Doc. 25-1, p. 168]. In the November 13th letter, Davidson told Shumate, "You can expect to receive a report from me very soon." [Shumate, Doc. 50, p. 38]. Shumate took that to mean "[w]ithin a week." [Shumate, Doc. 50, p. 38]. Davidson testified that he "typically … won't

give someone a specific timeline, because there are a lot of things that are out of my control." [Davidson, Doc. 49, p. 34]. Davidson recalls someone saying he estimated four to six weeks, but he testified he "never" would have given that estimate based on the scope of Green's investigation. [Doc. 49, p. 35]. In his testimony, Davidson explained, "You want to win the appeal. Not have it over quickly. And so my intention at that point was to get it done as quickly as I could, and that took me until June." [Doc. 49, p. 79].

- Davidson did not respond to all of Shumate's letters, but she "never talked to him personally about it." [Shumate, Doc. 50, p. 37]. Most of their communication was by email. [Shumate, Doc. 50, p. 38]. Shumate recalls that she emailed Davidson "a lot," probably more than 20 times, and at least once a month. [Shumate, Doc. 50, p. 39].
- In a letter to Green dated November 13, 2013, Davidson wrote, "I hope you understand that I cannot respond to every letter and every email that I receive from every client and their family members. … Currently, I am receiving hand-written letters from you, emails from Tennie, and emails from Trina. It has … been overwhelming for me to try to respond to each of these letters [and] emails quickly. Please understand ... I am not ignoring you. I am focusing on the main task that you have hired me to perform---analyzing and reviewing the voluminous documents in your case and reporting to you as to the potential avenues for relief from your conviction and sentence." [Shumate, Doc. 50, pp. 62-63; Doc. 25-1, p. 168]. Shumate was copied on Davidson's November 13th letter. [Shumate, Doc. 50, p. 63].

- On November 27, 2013, Shumate emailed Davidson and reminded him “we still have not received a monthly report from you.” [Shumate, Doc. 50, p. 40; Doc. 25-1, p. 170].
- Davidson wrote to Shumate on December 2, 2013, stating, “I hope to get all these documents soon and finish the report in the next several weeks.” [Shumate, Doc. 50, pp. 40-41].
- Shumate emailed Davidson to tell him that Green needed to talk to him and “[t]his will be the 2nd or 3rd time he has asked you to call him” and asked “[p]lease let me know when you can call him.” [Doc. 50, pp. 41-42; Doc. 25-1, p. 176]. Davidson responded on January 3, 2014, saying, “I apologize for not getting back to you earlier.” [Shumate, Doc. 50, p. 42; Doc. 25-1, p. 176].

- Davidson sent an email on February 19, 2014, stating, “I expect to have the report done soon, but not in time for him to … receive it, review it, and think about it prior to Tuesday of next week.” [Williams, Doc 50, pp. 89-90]. Davidson later testified that by “using words like ‘expect,’ and the previous email ‘hope,’ and not putting deadlines, I was trying to avoid committing to a date that I couldn’t -- that I didn’t believe I could commit to, but I … had every intention of getting it out as quickly as I could, and, obviously, I failed in that. I got it out in June, not [] earlier.” [Doc. 49, pp. 81-82].
    - Davidson testified during the evidentiary hearing, referring to Green, “with the length of time that you were given in your sentence, it seemed to me that getting it done right, getting a thorough report was more important than getting a quick report.” [Doc. 49, p. 83].

- Green sent Davidson a handwritten letter dated April 1, 2014, stating, "you told me last August that you would be finished with your research in four to six weeks, it's been months. I need to go home to my wife and kids." [Davidson, Doc. 49, p. 85, quoting Doc. 25-1, p. 182]. Davidson then testified, "I don't believe I ever made a promise of four to six weeks. As I explained earlier, that's completely unrealistic in a case like yours." [Doc. 49, p. 85]. Green then asked if he told Davidson to complete the report by the end of April, which Davidson recalled, adding "There were a lot of things you asked me to do that I didn't do. … [Y]ou sent a lot of letters and requested a lot of things and made a lot of demands, and then eventually things came to a head and we parted ways." [Doc. 49, pp. 85-86]. Green asked why Davidson had not finished the report by then, and Davidson testified: "It wasn't completed because I hadn't finished my evaluation of which of your claims [] were the best to go forward with, which ones were not good. I hadn't completed the report. It's 20-something pages, single-spaced." [Doc. 49, p. 86].
- Davidson emailed Shumate on May 6, 2014, and asked her to tell Green, "I'm working on finishing the report in his case and will visit him when it's done." [Shumate, Doc. 50, p. 42; Doc. 25-1, p. 263]. Davidson also apologized for not getting documents Green requested. [Shumate, Doc. 50, pp. 42-43].
- In an email to Shumate and Trina Williams dated May 22, 2014, Davidson wrote, "As I had mentioned, I would have either the finished report or an update by tomorrow," and "I'm almost there and you should be receiving a copy of it next week." [Shumate, Doc. 50, pp. 45-46; Doc. 25-1, p. 265]. He adds, referring to

Green, "If you should have a chance to talk to … him in the next few days, to see him over the … holiday weekend, please let him know I'm days away from being done with the report." [Shumate, Doc. 50, p., 46; Doc. 25-1, p. 265].

- In Davidson's experience, 9-10 months was a normal time to prepare a report in Green's circumstances. [Davidson, Doc. 49, p. 34]. The complexity of Green's report was "not atypical." [Doc. 49, p. 36]. Nonetheless, Davidson "put in far more hours than the flat rate [] agreed upon [] -- than [he] was compensated for." [Doc. 49, p. 38].
- When asked by Green, Davidson testified that he did not put his personal preferences ahead of Green's instruction to finish the report sooner. [Doc. 49, p. 101].
- When asked by Green whether "41 weeks to do this investigation was appropriate," Davidson answered, "It's how long it took in this case. … [I]t's relatively typical, this amount of time, for a case of this magnitude, and given the amount of communication between you family members and me during the pendency of this case, that's how long it took." [Doc. 49, p. 96].
- To Green's question whether a "thorough investigation, as you have here, … would facilitate a quick turnaround on a habeas," Davidson answered, "Not necessarily. … It depends on the nature of the habeas. If it's a simple habeas, then the investigation would be relatively simple, and then the petition itself would be relatively simple." [Doc 49, p. 96].

- **The Investigative Report**

- Davidson provided a 20-page single-spaced report dated June 7, 2014, providing "my investigation into the viability of different claims and my recommendations for going forward." [Doc. 25-1, p. 268; Doc. 29, p. 36]. Davidson sent the report to Green by letter of the same day. [Shumate, Doc. 50, p. 66; Doc. 25-1, p. 268. *See also* Davidson, Doc. 49, p. 33].
- Davidson's cover letter said, "This is the investigative report that I agreed to provide you regarding your case. I'm recommending that you raise the issue of violation of your state and federal constitutional right to counsel due to various deficiencies by your trial attorneys in their representation of you, as discussed below." [Doc. 49, p. 92, quoting Doc. 25-1, p. 268]. Davidson was "ambivalent about potential claims of judicial conflict of interest." [Doc. 49, p. 91].
- Davidson recommended federal and state claims of ineffective assistance of counsel because of New Mexico's interstitial approach to constitutional issues, examining the existence of a valid federal claim before analyzing a state claim, as well as to preserve an opportunity for a later federal habeas petition. [Davidson, Doc. 49, pp. 92, 93-94].
- In an email to Shumate dated June 9, 2024, Davidson said, "I apologize for the amount of time … it took to complete the report, but I think it's … important in the end to get it right than to get it done quickly. Getting the legal analysis took longer than I thought it would. But I think it's a solid report and provides a good foundation for our discussions about what to do next." [Shumate, Doc. 50, pp. 49-40, 101; Doc. 25-1, p. 291].

- **Davidson's calculation of the AEDPA deadline for filing a federal habeas petition**

- Davidson acknowledged at Green's evidentiary hearing that he disagrees with the State's calculation of the federal deadline. [Doc. 49, p. 88].
- When Davidson was retained for the investigative report, he understood that "the federal clock hadn't started yet, because the mandate for [*sic*] the Court of Appeals hadn't even been issued to the District Court. So the federal clock hadn't started." [Davidson, Doc. 49, p. 88].
- On October 21, 2013, Green sent Davidson a letter where he asked, "When does my federal habeas clock start?" [Doc. 25-1, p. 163]. As of that date, Davidson had not been hired for any legal representation. [Davidson, Doc. 49, p. 133]. Nor would Davidson be able to answer Green's question at that time because, in his view, Green's state court appeal was still pending. [Davidson, Doc. 52, pp. 14-16]. Also, the amount of time left to file a federal petition, assuming a state petition would be filed first, would not be determinable until the state petition is filed. [Doc. 52, p. 16. For Davidson's method of calculating the federal time remaining, *see* Doc. 52, pp. 18-19.].
- By email of June 14, 2014, Shumate asked Davidson, "What is the deadline for [Green's] habeas?" [Shumate, Doc. 50, p. 51; Doc. 25-1, p. 293]. Davidson replied on June 15th that he was away from his office and so did not have that information. [Shumate, Doc. 50, pp. 51, 71; Doc. 25-1, p. 293].
- In an email dated July 23, 2014, Williams told Davidson, "We are trying to find out the habeas deadlines? Hoping that you are not going to put us in a bind or put us at risk of missing the opportunity of filing a federal if needed," adding, "I am not quite sure of why the excessive delay. Please understand our lack of patience

with this, we do however understand this is not an overnight process and we do not want anything left undone or any rock not over turned." [Williams, Doc. 50, pp. 92-94; Doc. 25-1, p. 305]. Williams testified that "we were starting to get a little frustrated with the fact of not getting answers that we needed or getting correspondence back from him if he was asked a specific question." [Williams, Doc. 50, p. 94].

- After a phone call with Green on June 25, 2014, Davidson recorded a to-do list item to "find out deadline for habeas." [Davidson, Doc. 49, p. 59 and pp. 70-71].
- On July 23, 2024, Davidson performed a calculation of the AEDPA filing deadline and "came up with February 17th[, 2015]." [Davidson, Doc. 49, p. 59 (bracketed year added)]. Davidson used November 19, 2013, as "the effective date of the end of the appeals in your case, and then plus 90, and then coming up with February 17, 2014." [Davidson, Doc. 49, p. 71].
- Davidson met with Green, his mother and father, and his stepmother Tennie at the correctional center in Clayton, New Mexico, on August 1, 2014. [Davidson, Doc. 49, p. 58; Doc. 50, p. 15]. At that meeting, Davidson communicated … that the operative deadline[] was, according to my calculation, in February of 2015. February 14th. It may have been February 17th. It's somewhere in that ballpark." [Davidson, Doc. 49, p. 58; *see also* Doc. 52, pp. 20-21]. In his notes of that meeting, Davidson wrote "AEDPA deadline February 4th." [Davidson, Doc. 49, p. 59]. In later testimony, Davidson corrected that date, stating that "in my notes [from the Clayton meeting], I say here 'AEDPA deadline 2/14/25.'" [Doc. 49, pp. 71-72].

- At the evidentiary hearing, Davidson explained his theory of the complexity of Green's federal habeas deadline:
  - "[T]he simplest case of a criminal case is you have one judgment. [Green's]has five. The first of them was[] in 2022, and the most recent one was in 2018. That's unusual. When I represented [Green], the fourth Amended Judgment, Sentence and Commitment hadn't even been written yet.
  - "One of the things that happened in [Green's] case was that while [his] case was on appeal in the [New Mexico] Court of Appeals[….] The appeal was from the Second Amended Judgement -- the appeal was filed in January of 2012, and it wasn't decided until April of 2013. … While [his] case is on appeal, for reasons that I don't understand, and the District Court in the Sixth Judicial District never explained -- the District Court entered … a Third Amended Judgment, Sentence and Commitment, even though it lacked jurisdiction to do so, and it was a substantive change. And then when the Court of Appeals issued its opinion at the conclusion of [Green's] appellate proceedings in that court, the Court ordered the District Court to make corrections, and then seven months later, the Court of Appeals issues a mandate, [] in November of 2013, to the District Court to do what it said in its opinion, which is to make those corrections to [Green's] judgment." [Doc. 49, p. 57].
  - "And so, because a District Court loses jurisdiction over the case while the case is on appeal, the effective date of that judgment that was entered by

the Court on July 11, the way I analyzed it [] isn't until November 2013 when the mandate is issued, because the mandate is [] what set the jurisdiction of the District Court after the conclusion of the appeal." [Doc. 49, pp. 57-58; *see also* Doc. 49, pp. 121-29].

  - "In [Green's] case, the mandate told the District Court to issue an amended judgment, and for reasons that are beyond me, that wasn't done. I wasn't representing [Green] on the appeal at that time." [Doc. 49, p. 58].

- Davidson identified a second complexity concerned the effective date of the New Mexico Court of Appeals mandate:

  - "There were two different dates in November of 2013 as to when the mandate [] was issued and when the mandate was received from [*sic*] the District Court. I'm not sure which of those two a federal court would use as the operative date of when the July 2012 order became effective[.] My understanding from federal habeas law, is that as long as there's stuff going on in [Green's] case in the appellate courts or the district courts, [] in the state system, the federal clock hasn't begun to start ticking, and as of November, the Court of appeals had ordered the District Court to do something. And as I pointed out to [Green] in the letter of 2016, that had never been done." [Davidson, Doc. 49, p. 59].

  - "Now, when I look at it now, [] I note that the District Court [] -- I don't know how, but the District Court had made the correction to the judgment while [Green's] case was on appeal. That's very unusual. It's boilerplate case law in New Mexico[] that while a case is on appeal, the District Court

has no jurisdiction. … I don't know why the District Court did that[.] I've never seen that in any other case I've looked at. But the Court had no jurisdiction at that moment to issue that judgment, in my view." [Davidson, Doc. 49, pp. 59-60].

- The "interesting question in [Green's] case is[] what's the operative date of that judgment" because "the federal clock … doesn't start until [the] case is final in the state courts." [Davidson, Doc. 49, p. 60; *see also* Doc. 49, p. 122].

- Davidson explained why he calculated Green's federal deadline using the New Mexico Court of Appeals November, 2013, mandate rather than the New Mexico Supreme Court's denial of certiorari in July, 2013:
  - "[T]he jurisdiction of the case goes to the District Court, up to the Court of Appeals when you file the notice of appeal. Then when you file the petition[ for certiorari], the State Supreme Court is deciding whether or not to exercise jurisdiction. If it issues [] a writ of certiorari, [] then jurisdiction moves from the Court of Appeals to the state Supreme Court, and if it denies cert, then it's in the District [*sic*] Court's bailiwick, and it's their job to then issue a mandate back down to the District Court, which they didn't do, for reasons that I don't understand, until November." [Davidson, Doc. 49, p. 64].
  - "But [the state is] right the 2244 typically is going to be from the [] date of the Supreme Court's denial, and not a mandate. But that's usually a situation where you have what we call [] an empty mandate. This was not

an empty mandate. It was a substantive mandate that told the District Court that there was something to be done." [Davidson, Doc. 49, pp. 64-65; bracketed material provided].

- "And then I've seen federal cases that say, until the final resentencing is done, i.e., until the action in the District Court is done, that an appellate court orders it to do, your case isn't final. It can't be final for purposes of AEDPA analysis as long as there's stuff going on in state court." [Davidson, Doc. 49, p. 65].
- "So that would -- that's how I analyzed it. Maybe I made a mistake, but that's how I analyzed it." [Davidson, Doc. 49, p. 65].
- "So the question is [] what is the effect on AEDPA finality by the fact that the District Court entered a substantive judgment at a time when it lacked the authority to do that. And then the question after that is, what is the effective date of that judgment. And it seemed to me that it was tied to the mandate, which in this case was substantive, which told it to do something, and so it seemed fair -- I could see a federal court looking at it and saying, well, that November 2013 date is the effective date of the correction that the District Court made in July of 2013 when it lacked jurisdiction. It now has jurisdiction when that mandate is issued." [Davidson, Doc. 49, p. 66].

- Davidson conceded an error in his assumptions but explained its immateriality to his conclusion:

- "When I wrote that letter to you in January, 2016, … I said that the District Court had never done what the Court had asked it to do. [Davidson, Doc. 49, p. 62].
- "When I look at it today, I see that the District Court had done it, but [] at a moment when it had no jurisdiction. And the District Court confessed error[.] In its April 6, 2018, order, the District Court[] says the Third Amended Judgment was improperly entered while the case was on appeal. … It had no jurisdiction to do what it did at the moment that it did it. So I think the operative deadline [*sic*], the way I calculated it back in 2014, was the effective date of that judgment." [Davidson, Doc. 49, p. 62].
- "[T]he mandate comes down in [] November of 2013, and the District Court does nothing. Nothing. For years." [Davidson, Doc. 49, p. 63].
- "And then the first time that's addressed, [] was by the District Court in its order partially denying and partially granting a second [] habeas that [Green] had done, and that's the April 26, 2018, order where it discusses this wrinkle that I'm talking about …, and it confesses error. It says, … that was an error by the Court. It says it's harmless, but to the extent that it might've interfered with [Green's] right to seek federal habeas review, I don't see how that's harmless." [Davidson, Doc. 49, p. 63].

- Davidson testified that he used his best legal judgment in calculating Green's federal habeas deadline. [Doc. 49, p. 123, 129].
- The State of New Mexico calculated Green's deadline for filing the federal habeas petition as expiring in October, 2014; Davidson disagrees with that calculation,

which he understands is because the State considers the New Mexico Supreme Court's September, 2014, action as a "normal" or "empty mandate, requiring no further substantive action by the lower courts, while Davidson perceives it as a substantive mandate which did not re-trigger the federal countdown clock because it required further action by both the Court of Appeals and then the District Court to issue a new and corrected judgment and sentence. [Davidson, Doc. 49, pp. 125-26; *see also* Doc. 52, pp. 110-11]. Davidson concluded that the federal clock started to run again when the Court of Appeals mandate was received by the District Court which should have then taken further substantive action but did not. [Davidson, Doc. 49, p. 126]. Davidson was unaware then or at the time of his testimony about any guidance on Green's particular circumstances by the Tenth Circuit Court of Appeals. [Davidson, Doc. 49, p 128].

- Green asked Davidson whether it would have been practical to file a "tolling" or "skeleton" state petition earlier to toll the federal filing time, Davidson answered, "they might be compromising their federal petition, which is going to really be piggybacking on their state petition, because if you raise issues in a federal petition that weren't raised in the state petition, then the AG's office is going to come back and say, 'Dismiss this because it's a mixed petition,' and then you'd either have to elect to get rid of the new claims or go back to state court and litigate them and then maybe you're time-barred when you come back to federal court. But if there's not that much time left on the federal clock, then the petitioner's kind of in a bind and they need to decide: Do they want to preserve their state right and give it the best shot they can and forego the possible federal

right if things don't go the way they want in state court, or do they want to rush into state court with might end up being a half-baked petition for the sake of holding onto a federal right? And each case is going to be a little different." [Doc. 49, p. 99].

  - Asked by Green about whether his "best interest" would include preserving the right to file a federal petition, Davidson testified: "In your case, because you had raised with me the question of when your federal deadline is, then yeah, it would include that. That's why I filed your petition before the deadline that I had calculated…." [Doc. 49, p. 109].

- **State Habeas Petition**
  - Davidson commenced his representation of Green for state court habeas proceedings in August, 2014. [Davidson, Doc. 49, p. 145; *see also* Legal Representation Agreement, Doc. 46-1, p. 1-4]. That agreement defines the scope of the representation to include: "habeas corpus proceedings in the Sixth Judicial District Court" to include filing a state habeas petition, a potential evidentiary hearing and a state Supreme Court petition for certiorari. [Doc. 46-1, p. 1].
    - "It does not, however, include any agreement regarding fees for federal habeas corpus proceedings …, a petition for certiorari to be filed in the United States Supreme Court, or trial proceedings on remand to the Sixth Judicial District Court upon grant of habeas corpus relief. Nor does it include briefing or oral argument to the New Mexico Supreme Court in the event … certiorari were granted …. Should client and Guarantors wish to hire Attorney to represent Client in such additional phases of this

litigation, the parties may negotiate a separate agreement to cover representation in such proceedings." [Doc. 46-1, p. 1].

- On October 27, 2014, Williams said to Davidson in an email, "If this comes across as a little much. Please be reminded that there has been a huge discrepancy between when you say you can do things and when they actually get done." [Williams, Doc. 50, pp. 94-95; Doc. 25-1, p. 307]. As for the "tolling deadline," Williams testified that "[a]t this time, when we hadn't been made aware, we had asked several times, but we did not have a definite date from Mr. Davidson." [Williams, Doc. 50, p. 96].
- Davidson filed Green's habeas petition in the New Mexico courts on February 9, 2015. [Doc. 12-1, p. 352; Shumate, Doc. 50, p. 81; *cf.* Davidson, Doc. 49, pp. 58-59]. ]. Davidson testified that there was "around a week" remaining on Green's federal limitation period when the state petition was filed. [Doc. 49, p. 103]. In other testimony, Davidson clarified that the petition was ready to file on February 6th, a Friday, but was file-stamped Monday, February 9th for a reason Davidson does not recall. [Doc. 52, p. 22].
- As of February 9th, by Davidson's calculation, Green would have five days to file a federal petition after the resolution of his state petition, and could have filed earlier in federal court and suffered an abeyance of the timely yet unripe petition to assure meeting the deadline. [Davidson, Doc. 52, pp. 22, 25-26]. Davidson felt that the five days was adequate because the federal petition, raising only federal claims which had already been prepared for filing in state court, would be relatively quick and easy, and filing a petition for certiorari from the New Mexico

Supreme Court to the United States Supreme Court would extend the deadline thirty days beyond the United States Supreme Court's denial of certiorari, were that to happen. [Davidson, Doc. 52, pp. 23-25]. The federal petition could be substantially prepared even before the state proceedings concluded. [Davidson, Doc. 52, p. 25].

  - Shumate and Williams believed that Davidson "preserved" Green's federal habeas deadline by filing his state habeas petition. [Shumate, Doc. 50, p. 59; Williams, Doc. 50, p. 102; see also Doc. 49, p. 15].
  - Davidson took about six months from being hired to prepare the state petition to filing it. [Davidson, Doc. 49, p. 103].
  - Ultimately, Green's family paid Davidson $6,500 for an investigative report and $29,000 for his work on Green's state habeas petition. [Shumate, Doc. 50, pp. 66-67, 76-77; Doc. 25-1, pp. 10, 295-296].

- **Davidson's Withdrawal as Green's Attorney**
  - Throughout the process, Davidson "thought [Green was] very involved[ and] very demanding, and[] sometimes overbearing in [his] communications with me over the course of [] our representation." [Doc. 49, p. 55; *see also id*., pp. 146-47].
  - On March 1, 2015, Davidson emailed Shumate expressing frustration with Green's conduct: "If he has trust in me as his attorney, then he needs to show it and place some trust in me and not second-guessing [sic] everything. … It means he trusts that I have his best interest in mind, and that I know what I'm doing, even if there are things here and there … that might [sic] do differently if it were -- if he were in my shoes. … I feel like a broken record, because you and I have

emailed about this very problem in the past." [Shumate, Doc. 50, pp. 52-54; Doc. 25-1, p. 331].

- On March 31, 2015, in an email to Tennie, Davidson said of Green, "Brant needs to decide whether or not he wants be to be his lawyer in this case. He seems to want to have it both ways. I'm not any client's mouthpiece, but I feel as if that's what Brant thinks I am. We've had discussions about this issue in the past. I can't have him second-guessing every little thing about each aspect of the case. Buth that's what he's doing. If he has lost trust in me as his attorney, then we need to re-evaluate the relationship. If he has trust in me as his attorney, then he needs to show it and place some trust in me and not second-guess everything. Does trust mean that he'll agree with every word choice in every pleading? No. Does trust mean that he'll agree with every argument and the cases or rules on which it's based in every case? No. It means that he trusts that I have his best interest in mind and that I know what I'm doing, even if there are things here and there that he might do differently if he were in my shoes." [Doc. 25-1, p. 331; *see also* Doc. 49, p. 106]. Asked by Green about the state of their relationship at that time, Davidson answered, "'[Y]ou and I disagreed about a bunch of things, and I think I found your demands on me to be onerous and somewhat overbearing, and [] I don't think that it was a very -- certainly not an ideal attorney-client relationship." [Doc. 49, pp. 106-107].
- Davidson explained that Green's demand for "the minimum I require in my habeas corpus petition" was contrary to the proper attorney-client relationship and

would render him Green's "mouthpiece," which was unacceptable to Davidson. [Davidson, Doc. 52, pp. 74-75].

- Green wrote a letter to Davidson on June 15, 2015, asking for a deadline for filing a federal habeas petition; Davidson testified he was not able to answer that question because the state habeas petition was still pending and the federal deadline was being tolled. [Doc. 52, p. 21].
- By email of October 18, 2015, Shumate asked Davidson, "What is the deadline … for Brant's Federal Habeas? ... be specific," and she asked, "will you … tell me how to compute it?" [Shumate, Doc. 50, pp. 54-55; Doc. 25-1, p. 340]. Davidson responded the next day saying, "As for calculating the deadline for a federal habeas, here's the simple answer: It is generally one year from the date when his state convictions became final. … I can look at that issue for you in more depth, but I will need to set aside some time to do that. As I said, it's often not as straightforward as you might imagine." [Shumate, Doc. 50, pp. 55-56; Doc. 25-1, p. 342]. Shumate says Davidson never gave her a specific date. [Shumate, Doc. 50, p. 56-57]. Davidson testified that a specific date could not be calculated as long as the state proceedings were still ongoing. [Doc. 52, p. 27].
- By letter of November 16, 2015, Green asked Davidson again to calculate the deadline for filing a federal habeas petition: "I need to know exactly. Please enumerate each date and time consumed and remaining since the [New Mexico Supreme Court] issuance of their response to my appeal. … Your inaction prohibits me from the furtherance of my case." [Davidson, Doc. 52, p. 30; Doc. 25-1, p. 344]. Davidson testified that one answer at the time was "approximately

five days" as calculated before, but it appears to him that Green was possibly asking a different question. [Doc. 52, pp. 30-31]. Davidson testified that filing a petition for certiorari with the United States Supreme Court, even if denied, could add 30-60 days to the deadline which he considered "ample time." [Doc. 52, pp. 66-67].

- Davidson was allowed to withdraw from representing Green in the state habeas proceedings on December 17, 2015. [Davidson, Doc. 52, p. 32; Doc. 12-1, p. 425]. The New Mexico District Court appointed new counsel for Green on March 15, 2016. [Doc. 12-1, p. 425].

- **Correspondence after Davidson's Withdrawal**
  - On January 5, 2016, Shumate by email asked Davidson, "Did you have the chance to compute the deadline for Brant's Federal Habeas? He suspects that it might have already passed. If not, what is the date for the deadline?" [Shumate, Doc. 50, p. 57; Doc. 25-1, p. 352; Doc. 52, p. 31]. Green's state appellate proceedings were still pending on January 5, 2016. [Davidson, Doc. 52, p. 32]. Davidson responded, "In any event, I'll take a look at it and let you know what I think is the [sic] deadline likely to be." [Shumate, Doc. 50, p. 58; Doc. 25-1, p. 352]. Shumate testified that she was asking again "because he never gives me an answer." [Shumate, Doc. 50, p. 58].
  - By a nine-page, single-spaced letter of January 7, 2016, though no longer representing him, Davidson provided Green with his "analysis of your federal habeas deadline." [Shumate, Doc. 50, p. 58; Doc. 25-1, p. 354, pp. 354-362; Doc. 52, pp. 28, 32-33]. Davidson calculated the federal deadline as expiring

February 17, 2015. [Davidson, Doc. 49, p. 124]. That analysis included several hypotheticals for different triggering dates; Shumate found it very confusing. [Shumate, Doc. 50, pp. 72-74; Doc. 25-1, pp. 354-56]. This was the second calculation of the federal deadline that Davidson provided Green. [Davidson, Doc. 49, p. 121].

- In his testimony, Davidson recalled:
- In his January 7, 2016, letter, although no longer representing Green, Davidson "recommended that [he] ask the Court and ask the state if they would oppose it, the State District Court to issue a corrected judgment as ordered to do so by the Court of Appeals, which it never did, or which [] I believed at the time it had never done." [Davidson, Doc. 49, p. 60 and Doc. 52, p. 33-36; Doc. 25-1, pp. 359-60]. "[I]f [Green] had gone back to the District Court and had asked them to make a correction to that judgment as ordered by the Court of Appeal, then [Green] could have … filed a Notice of Appeal, because a District Court's interpretation of a mandate is always something that can be appealed." [Davidson, Doc. 49, p. 61]. Davidson testified: "[M]y representation of [Green] had ended previously, but that would've been a way of extending … [Green's] federal deadline." [Doc. 49, p. 61; *see also* Doc. 49, pp. 72-76, 124-25; Doc. 52, pp. 84-86].
- By letter dated January 11, 2016, Green acknowledged receipt of his case files from Davidson. [Doc. 25-1, p. 364; *see also* Doc. 49, pp 119-20].

- **State Court Proceedings after Davidson's Withdrawal**

- The New Mexico District Court denied Green's petition for habeas relief on December 14, 2016. [Doc. 12-1, p. 425]. Green filed a petition for certiorari with the New Mexico Supreme Court which was denied on or before August 17, 2017. [Doc. 12-1, p. 426].
- Davidson testified that, as of the date the New Mexico Supreme Court denied certiorari, Green still had five days to file a federal habeas petition. [Doc. 52, pp. 44-45, 59]. Davidson testified that Green did not follow Davidson's advice on how to assure that he filed a timely federal habeas petition. [Davidson, Doc. 52, p. 83].
- Green filed a motion to amend his state court habeas petition on February 9, 2018, which was dismissed in part with an order to answer on April 6, 2018. [Doc. 12-1, p. 426]. While his motion was pending, on March 26, 2018, Green entered his appearance *pro se* in the state district court. [Doc. 12-1, p. 426]. The State's response was filed on May 2, 2018, Doc. 12-1, p. 426], and the case was closed with the entry of a "Fourth Amended Judgment, Sentence and Commitment" on June 27, 2018. [Doc. 12-1, p. 426].

- **Green's Filing of Federal Habeas Petition**
  - Green filed a *pro se* petition for habeas relief under 18 U.S.C. 2244 on October 12, 2018, more than three months after his state court proceedings ended and nearly three years after Davidson withdrew from his case. [Doc. 1].
  - After Green filed his federal habeas petition, Trina contacted Davidson about resuming his representation, which Davidson declined. [Davidson, Doc 49, pp. 76-77].

- On September 2, 2020, after New Mexico filed its answer brief describing Green's federal habeas petition as untimely, Williams wrote to Davidson to ask whether he did or did not file the state habeas in time to preserve Green's time to file a federal petition. [Williams, Doc. 50, pp. 98-99 and Doc. 49, p. 17; Doc. 25-1, p. 367]. Williams recalls that the family wanted assurances that the state petition was not untimely filed; if received, she testified, then the family would be interested in hiring Davidson for the federal habeas. [Williams, Doc. 49, pp. 22-23]. Davidson responded the same day: "It was years ago, so I don't specifically recall what considerations I had in mind when I filed the state habeas corpus petition. In some state habeas cases, we try to reserve the federal habeas right, but in other state habeas cases, other considerations (such as getting more information to put in the petition, or time obstacles that preclude filing it in time to stop the federal clock)" come into play and trump the desire to preserve the federal habeas right. … In other words, in some cases, filing by a certain date is paramount, while in other cases, it's not the paramount concern. … I vaguely recall that he and I did not see eye to eye on what we should be pursuing or how to pursue it -- I'm no casting aspersions, I'm just saying that my recollection is that he and I frequently had clashes as to what to do and how to do it, so it's possible that he and I weighed various goals differently." [Williams, Doc. 50, pp. 99-101; Doc. 25-1, p. 369].
- Williams testified that it was the intention of the family "to preserve any and every opportunity we could," and the family's "paramount" concern was [t]o

preserve the federal habeas timeline in case the state habeas was unsuccessful." [Williams, Doc. 50, p. 100].

- Williams testified that Davidson never told her that he would not be able to toll the federal habeas deadline, and she believed he had done so by filing the state petition. [Williams, Doc. 50, p. 102]. She believes that she asked Davidson for an exact deadline for the federal petition "probably five to ten" times but never got a specific answer. [Williams, Doc. 50, pp. 102-03]. If they had gotten a deadline from Davidson, the family would have had an opportunity to look into their options. [Williams, Doc. 50, p. 103].
- Davidson testified to his opinion that Green's federal habeas petition was timely filed. [Doc. 49, p. 56].